IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 19-162 |
| | ) |
| RICHARD COTO-WHEAT, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 1448)**

Pending is Defendant's *Pro Se* Motion for Release (ECF 1448), and the Government's Response in Opposition to the Motion (contending that Defendant failed to prove extraordinary and compelling reasons to warrant such a release. ECF 1477. For the following reasons, Defendant's Motion will be DENIED.

   *I. Factual and Procedural History*

Defendant, Richard Coto-Wheat, pled guilty on November 26, 2019, to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(B)(i). ECF 609. At the time Defendant changed his plea, he entered into a plea agreement with the Government wherein, pursuant to Rule 11(c)(1)(C), Defendant and the Government stipulated and agree that the appropriate sentence in this case would be a term of imprisonment of 70 months, a fine, if any, to be determined by the Court, a term of supervised release of 4 years, and a special assessment of $100. ECF 607-1. This Court approved the plea agreement and on July 8, 2020, Defendant was sentenced to the agreed-upon term of 70 months imprisonment, 4 years of supervised release, (the Court did not order a fine), and Defendant was

ordered to pay a $100 special assessment.  ECF 1085.  The Court had previously entered an Order of Forfeiture against Defendant, stating that a Ruger 9E 9mm handgun (Serial Number: 337-87810), associated ammunition and magazine, and $456.00 in United States currency had to be forfeited to the Government, pursuant to 21 U.S.C. § 853(a)(1).  ECF 700.

The facts of the case are as follows:

The Greater Pittsburgh Safe Streets Task Force, led by the Federal Bureau of Investigation, conducted an investigation into drug-trafficking activity occurring in the Western District of Pennsylvania, specifically in the Braddock section of Pittsburgh.  ECF  879.  Law enforcement identified several individuals, suspected at the time, of illegally distributing controlled substances in the Greater Pittsburgh region, as members of a neighborhood-based street gang, self-titled "SCO."  *Id*.  Defendant was identified as a close associate of members of SCO.  *Id*.

As a result of the initial investigation, from January of 2019 through May of 2019, investigators obtained nine Title III wiretap authorizations.  *Id*. Through some of the intercepted communications, law enforcement confirmed that Defendant was actively involved in the trafficking of heroin, supplying a number of regular customers.  *Id*.

For example, the investigation revealed that Defendant obtained controlled substances, to distribute, from Howard McFadden.  *Id*.  In addition, law enforcement executed both a search warrant and arrest warrant at 1108 Airbrake Avenue, Apartment 2, Wilmerding, Pennsylvania. *Id*.  This residence was associated with Defendant throughout the investigation.  *Id*.  For example, Defendant drove a Chevy Impala, which is registered to the same address and was observed parked at that location.  *Id.*  A search of the residence resulted in the seizure of

2

$456.00, three bags of a large quantity of suspected marijuana, suspected heroin/fentanyl, stampers, packaging materials, as well as a Ruger pistol. *Id.*

Law enforcement obtained additional information against Defendant via physical and electronic surveillance, as well as law enforcement interdictions, wherein controlled substances were seized from individuals obtaining heroin and cocaine base from members of the conspiracy. *Id.* It was determined that Defendant was responsible for the sale/distribution of at least 100 but less than 400 grams of heroin. *Id.*

## II. Standard of Review

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. U.S.*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)     in any case—
>
> (A)     the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.] 18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason" for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

> 1. Extraordinary and Compelling Reasons. -- Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
> . . .
>    (ii) The defendant is
>    (I) suffering from a serious physical or medical condition,
>    (II) suffering from a serious functional or cognitive impairment, or
>    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  Notably, the Court of Appeals for the Third Circuit recently held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'."  *U.S. v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

It is the defendant who bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A). *U.S. v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a defendant may file a Section 3582(c)(1)(A) motion with the Court.  As explained by the Court of Appeals for the Third Circuit in *U.S. v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request." *Harris,* 812 Fed. App'x. at 107.

The First Step Act's amendment of 18 U.S.C. § 3582 ("Section 3582") provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (2)   in any case—
>
> (B)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original

      term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction; . . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

    The defendant bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A)(i). *U.S. v. Grasha*, Crim. No. 18-325, 2020 WL 5747829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

   *III. Discusssion*

    As a preliminary matter, the Court notes that Defendant did exhaust his administrative remedies and waited 30 days from the day he received the warden's denial of his request for compassionate release before filing his petition with this Court.  Therefore, the Court will consider the merits of Defendant's request for compassionate release to determine if extraordinary and compelling circumstances are present in this case warranting such a release.

    The Government's Response in Opposition notes that Defendant is a 28-year old man with no underlying health issues.  ECF 1447.  Defendant's medical records (which were filed under seal at ECF 1478), support the Government's assertion about Defendant's age and overall good health.  In addition, the records confirm that Defendant received the complete (2-shot) Moderna vaccine in 2021, as well as a Moderna booster shot on February 10, 2022.  *Id.*  Although Defendant did test positive for COVID-19 on September 14, 2021, he was asymptomatic during his entire quarantine period.  *Id.*

The United States Court of Appeals for the Third Circuit has determined that even when evidence exists that COVID-19 may spread from the community into a prison population, this alone cannot justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *see also, United States v. Roeder*, 807 F. App'x 157, 161 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of [COVID-19] does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

Turning to this case, the Court finds that Defendant is a healthy young man with no co-morbidities placing him at greater risk for not surviving a bout of COVID-19. The Court further finds that because Defendant already contracted COVID-19, and was asymptomatic during his bout with the virus, and because he has now been fully immunized against the virus, the risk COVID-19 poses to Defendant is not extraordinary. Thus, there is no extraordinary or compelling reason to release Defendant on medical grounds.

Next Defendant's argument that he should be released because he is unable to participate in any of the Court-recommended programs is without merit. As noted above, the Court, during Defendant's sentencing hearing recommended Defendant for participation in educational, work force, and drug rehabilitation programs during his term of incarceration at the federal correctional facility. The Government's Response in Opposition notes that upon contacting the

warden at the correctional facility, it was discovered that the programs are operating on a modified schedule. ECF 1447. The Government attached a one-page record which shows that Defendant has been tested for his GED and is currently enrolled in other educational classes. ECF 1448, p. 100. Thus, this Court finds that the programs which were recommended at the time of sentencing are being offered to Defendant and, to his credit,e he is taking advantage of those opportunities. Accordingly, the Court finds no extraordinary or compelling reason to release Defendant on the basis of "lack" of programming.

*IV. Conclusion*

Based on the foregoing law and authority, this Court hereby DENIES Defendant's Motion for Sentence Reduction Under 18 U.S.C. 3582(c)(1)(A), ECF 1448.

SO ORDERED this 11th day of May, 2022

s/   Arthur J. Schwab
United States District Judge

cc:   All counsel of record
   and
  Richard Coto-Wheat
  FCI-Cumberland
  PO Box 1000
  Cumberland, MD 21501